TYSON, Judge.
 

 *513
 
 Rockingham County Department of Social Services ("RCDSS") appeals and Gloria Watlington ("Watlington") cross-appeals from a final decision affirming Watlington's termination
 
 *398
 
 and ordering RCDSS to provide back pay salary to Watlington due to a procedural violation. We affirm in part, reverse in part, and remand.
 
 *514
 

 I. Factual Background
 

 RCDSS hired Watlington as a Community Social Services Technician on 9 January 2012. Her primary responsibilities included providing transportation to families and children served by RCDSS, supervising case visits between parents and children in RCDSS' custody, and providing case visit reports to RCDSS social workers.
 

 When Watlington was hired, RCDSS provided her with a copy of Rockingham County's Personnel Policy ("RCPP"). Watlington also attended an orientation for new employees. The personnel policy and orientation described appropriate employee behavior, including RCDSS' policies on unacceptable personal conduct and the acceptance of gifts and favors.
 

 On 15 April 2013, the Rockingham County Board of Commissioners passed a resolution to establish a consolidated human services agency, which consolidated its departments of public health and social services. The resolution, along with a subsequent resolution passed on 3 August 2013, clarified employees of the consolidated human services agency remained subject to the North Carolina Human Resources Act ("SHRA") in most circumstances. The resolutions provided that for those areas of policy and procedures where the RCPP had been recognized by the State as substantially equivalent to the SHRA, the employees are governed exclusively by the RCPP. RCDSS presented no evidence demonstrating the State had recognized the RCPP as substantially equivalent.
 

 In December 2015, Watlington supervised a RCDSS custody visit between P.H. and her daughter. P.H. testified she wanted to do something nice for Watlington, because Watlington "had been real nice in letting us have extra time on our visits and been encouraging that we would be able to be reunited." P.H. purchased an inexpensive jewelry set, which Watlington accepted.
 

 When Watlington's supervisor informed Watlington the gift violated RCDSS' policy, she immediately surrendered the jewelry set to RCDSS. Watlington's supervisor notified Debbie McGuire, the Director of RCDSS, of the occurrence. On 9 December 2015, Watlington was placed on administrative leave with pay, pending investigation and review of allegations made against her regarding violation of the RCPP's provision prohibiting the acceptance of gifts.
 

 During the investigation, additional allegations came forth regarding Watlington's personal conduct. These allegations included she had: accepted food and beverages from RCDSS clientele on more than one
 
 *515
 
 occasion; used Social Security Income ("SSI") money belonging to a child in RCDSS custody to purchase food for herself; accepted a cash loan of sixty dollars from a foster parent; and removed a bassinet stored at RCDSS without permission and gave it to another foster family.
 

 On 11 December 2015, RCDSS provided Watlington a written notice of a pre-dismissal conference to be held that afternoon to discuss a recommendation for her dismissal, due to "unacceptable personal conduct." The notice listed the specific reasons for the recommendation of dismissal. Watlington, her supervisor, and McGuire attended the meeting and discussed the documented allegations.
 

 On 14 December 2015, Watlington received a written notice of dismissal from employment. The notice again included the specific reasons for Watlington's dismissal and informed her of her right to appeal to the County Manager, Lance Metzler. Watlington appealed.
 

 Metzler upheld Watlington's termination and notified her by letter on 15 December 2015. The letter did not inform Watlington of the specific reasons why Metzler was upholding her termination or that his letter was public record. Watlington appealed her termination to the North Carolina Office of Administrative Hearings and Review ("OAH") by filing a Petition for a Contested Case Hearing on 11 January 2016.
 

 The case was heard before the administrative law judge ("the ALJ") on 23 May 2016. After the hearing and reviewing the parties' briefs and proposed orders, the ALJ entered
 
 *399
 
 his final decision and made the following findings of fact:
 

 13. While employed by Respondent, Petitioner engaged in the following conduct: (1) accepted a loan in the amount of sixty dollars ($ 60.00) offered by a foster parent between two (2) and three (3) years prior to her termination by Respondent; (2) used approximately six dollars ($ 6.00) of a minor child's money to purchase food for herself while transporting the minor child across the state at the request of her supervisor, which Petitioner repaid to Respondent within one (1) week; (3) consumed leftover food purchased by a foster parent for herself and a minor child when offered by the foster parent; (4) gifted a bassinet to a foster family being served by Respondent from an area where Respondent keeps both donations and property assigned to particular families under its supervision, and upon being notified of a problem, retrieved said bassinet and returned it to Respondent; (5) accepted a slice
 
 *516
 
 of cake or cupcakes offered by a foster family at a minor child's birthday party; and (6) accepted a wrapped pair of earrings from a foster parent on behalf of her child, which were immediately returned upon an issue being raised by Respondent.
 

 14. Prior to Petitioner's voluntary disclosure of item number six (6) above to a co-worker, Respondent had taken no formal disciplinary action against Petitioner, despite being aware of at least two (2) of the same aforementioned allegations.
 

 15. Prior to Respondent's initiation of an investigation into Petitioner's conduct, no witness called to testify by Respondent had reported items (1), (3), or (5) of the aforementioned conduct as concerning to them, violating the RCPP; or asked Respondent to initiate formal discipline against Petitioner based on such conduct despite being fully aware of them.
 

 16. Respondent offered no evidence that any of the aforementioned conduct by Petitioner: (1) negatively impacted her job performance; (2) influenced her job performance, recommendations, or reporting; (3) diminished the reputation of Respondent in the community; or (4) led to tangible financial, legal, or regulatory consequences for Respondent.
 

 ...
 

 18. On or about August 5, 2013, the Rockingham County Board of Commissioners passed an amending and clarifying resolution stating that "[e]mployees of the Consolidated Human Services Agency remain subject to the State Personnel Act. In those areas where the Rockingham County Personnel Policy has been recognized by the state as 'substantially equivalent,' the employees will be governed by the provisions of the [RCPP]."
 

 19. Respondent offered no evidence demonstrating that it is exempt from the provisions of the State Human Resources Act ("SHRA"), codified at N.C.G.S. § 126-1
 
 et seq
 
 , as implemented by the North Carolina Administrative Code at 25 NCAC 01J.0101
 
 et seq
 
 , or that its disciplinary or grievance procedures have been
 
 *517
 
 recognized by the State Human Resources Commission as substantially equivalent.
 

 The ALJ also made the following conclusions of law:
 

 1. Petitioner is subject to the protections of the SHRA.
 

 2. Due to the language of the two (2) resolutions passed by the Rockingham County Board of Commissioners and the absence of an exemption by the State Human Resources Commission respecting its disciplinary or grievance procedures, Respondent's conduct as to disciplinary or grievance procedures is controlled by Title 25, Subchapter J, of the North Carolina Administrative Code.
 

 3. In cases in which a state employee is disciplined for "unacceptable personal conduct" that does not involve criminal conduct, the North Carolina Court of Appeals interpreted the North Carolina Supreme Court's decision in
 
 Carroll
 
 as adopting a "commensurate discipline" approach.
 
 See
 

 Warren
 

 v.
 

 N.C. Dep't of Crime Control and Pub. Safety
 
 [
 
 221 N.C.App. 376
 
 , 380],
 
 726 S.E.2d 920
 
 , 924 (N.C. App. 2012). According to
 
 Warren
 
 , "the proper analytical approach is to first determine whether the employee engaged in the conduct the employer
 
 *400
 
 alleges. The second inquiry is whether the employee's conduct falls within one of the categories of unacceptable personal conduct provided by the Administrative Code. Unacceptable personal conduct does not necessarily establish just cause for all types of discipline. If the employee's act qualifies as a type of unacceptable conduct, the tribunal proceeds to the third inquiry: whether that misconduct amounted to just cause for the disciplinary action taken."
 

 4. Respondent failed to comply with the procedural requirements for dismissing Petitioner from employment for unacceptable personal conduct by not providing specific written reasons and written details in the Final Agency Decision.
 

 5. 25 NCAC 0lB .0432(b) provides, "[f]ailure to give specific reasons for dismissal, demotion or suspension without pay shall be deemed a procedural violation. Back pay or attorney's fees, or both, may be awarded for such a period of time as the Commission determines, in its discretion, to be appropriate under all the circumstances."
 

 *518
 
 6. The December 15, 2015 letter written by Rockingham County Manager Lance L. Metzler constitutes the Final Agency Decision for the purposes of this action.
 

 7. Based on the language of the Final Agency Decision and pursuant to 25 NCAC 1J.0613(4)(h), Respondent lacked procedural just cause to terminate Petitioner.
 

 The ALJ's final decision affirmed Watlington's termination, but ordered RCDSS to pay Watlington back pay due to a procedural violation. RCDSS appeals. Watlington cross-appeals.
 

 II. Jurisdiction
 

 Jurisdiction lies in this Court pursuant to N.C. Gen. Stat. § 7A-29(a) (2015).
 

 III. Issues
 

 The appeal and cross-appeal request this Court to address whether the ALJ erred by: (1) holding Watlington was a career State employee subject to the provisions of the SHRA and not the local RCPP; (2) holding Title 25, Subchapter J of the North Carolina Administrative Code governs the case; (3) affirming Watlington's termination; and (4) awarding back pay to Watlington for an alleged procedural violation.
 

 IV. Standard of Review
 

 N.C. Gen. Stat. § 150B-51 (2015) governs the scope and standard of this Court's review of an administrative agency's final decision.
 
 Harris v. N.C. Dep't of Pub. Safety
 
 , No. COA16-341, --- N.C.App. ----, ----,
 
 798 S.E.2d 127
 
 , 140,
 
 2017 WL 900037
 
 (filed Mar. 7, 2017) ;
 
 Overcash v. N.C. Dep't of Env't & Natural Res.
 
 ,
 
 179 N.C.App. 697
 
 , 702,
 
 635 S.E.2d 442
 
 , 446 (2006). The standard of review is dictated by the substantive nature of each assignment of error.
 
 N.C. Dep't of Env't & Natural Res. v. Carroll
 
 ,
 
 358 N.C. 649
 
 , 658,
 
 599 S.E.2d 888
 
 , 894 (2004).
 

 N.C. Gen. Stat. § 150B-51(b) provides:
 

 The court reviewing a final decision may affirm the decision or remand the case for further proceedings. It may also reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the findings, inferences, conclusions, or decisions are:
 

 (1) In violation of constitutional provisions;
 

 (2) In excess of the statutory authority or jurisdiction of the agency or administrative law judge;
 

 *519
 
 (3) Made upon unlawful procedure;
 

 (4) Affected by other error of law;
 

 (5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or
 

 (6) Arbitrary, capricious, or an abuse of discretion.
 

 "It is well settled that in cases appealed from administrative tribunals, questions of law receive
 
 de novo
 
 review, whereas fact-intensive issues such as sufficiency of the evidence to support an agency's decision are reviewed under the whole-record test."
 
 Carroll
 
 ,
 
 358 N.C. at 659
 
 ,
 
 599 S.E.2d at 894-95
 
 (citation and quotation marks omitted).
 

 The court engages in
 
 de novo
 
 review where the error asserted is pursuant to § 150B-51(b)(1), (2), (3), or (4). N.C. Gen. Stat. § 150B-51(c)
 

 *401
 
 . "Under the
 
 de novo
 
 standard of review, the trial court considers the matter anew and freely substitutes its own judgment for the agency's."
 
 Overcash
 
 ,
 
 179 N.C.App. at 703
 
 ,
 
 635 S.E.2d at 446
 
 (brackets, citation, and quotations marks omitted).
 

 On the other hand, where the error asserted is pursuant to N.C. Gen. Stat. § 150B-51(b)(5) & (6), the reviewing court applies the "whole record standard of review." N.C. Gen. Stat. § 150B-51(c). Under the whole record test,
 

 [The court] may not substitute its judgment for the agency's as between two conflicting views, even though it could reasonably have reached a different result had it reviewed the matter de novo. Rather, a court must examine all the record evidence-that which detracts from the agency's findings and conclusions as well as that which tends to support them-to determine whether there is substantial evidence to justify the agency's decision. Substantial evidence is relevant evidence a reasonable mind might accept as adequate to support a conclusion.
 

 Carroll
 
 ,
 
 358 N.C. at 660
 
 ,
 
 599 S.E.2d at 895
 
 (citations and quotation marks omitted).
 

 V. Career Employee Status and Applicability of the SHRA
 

 RCDSS argues the findings of fact do not support the ALJ's conclusion that Watlington is subject to the provisions of the SHRA. RCDSS argues the ALJ failed to make any findings to demonstrate Watlington
 
 *520
 
 was a "career State employee," such that "just cause" was required to support her termination.
 
 See
 

 N.C. Gen. Stat. § 126-35
 
 (a) (2015).
 

 The SHRA applies to all non-exempt State employees and certain local government employees, including those who work for local social services departments.
 
 N.C. Gen. Stat. § 126-5
 
 (2015). The General Assembly has delegated local governments the statutory authority to create a consolidated human services agency pursuant to N.C. Gen. Stat. § 153A-77(b) (2015). These local employees are not subject to the SHRA, unless the local government chooses to keep them subject to the provisions of the SHRA upon consolidation.
 
 N.C. Gen. Stat. § 126-5
 
 .
 

 A career State employee is defined as a State employee or a local government employee subject to the SHRA who:
 

 (1) Is in a permanent position with a permanent appointment, and
 

 (2) Has been continuously employed by the State of North Carolina or a local entity as provided in G.S. 126-5(a)(2) in a position subject to the North Carolina Human Resources Act for the immediate 12 preceding months.
 

 N.C. Gen. Stat. § 126-1.1
 
 (2015). Career State employees may only be "discharged, suspended, or demoted for disciplinary reasons" upon a showing of "just cause."
 
 N.C. Gen. Stat. § 126-35
 
 (a) ;
 
 see
 
 25 NCAC 01I.2301 (2016) ; 25 NCAC 01J.0604 (2016).
 

 The final decision's findings of fact show RCDSS hired Watlington as a Community Social Services Technician on 9 January 2012. Her employment was terminated on 15 December 2015. The findings also demonstrate the Rockingham County Board of Commissioners passed resolutions leaving the employees of the consolidated human services agency subject to the SHRA, except where the RCPP had been recognized by the State as "substantially equivalent." RCDSS failed to present any evidence showing the State had recognized the RCPP as "substantially equivalent" or that RCDSS was only required to follow the provisions on the RCPP in order to terminate Watlington. These findings support the ALJ's conclusion that Watlington, as an employee of RCDSS, was subject to the SHRA.
 

 Presuming
 
 arguendo
 
 , the findings were insufficient to support the ALJ's conclusion that Watlington was subject to the SHRA, we note RCDSS never argued this issue before the ALJ. Rather, RCDSS' proposed order and brief in support of its order stated Watlington was "subject
 
 *521
 
 to the provisions of [the SHRA]." We also acknowledge the ALJ's order does not include any findings of fact showing Watlington was a career State employee. However, this issue was also not contested in the hearing before the ALJ. RCDSS' brief and proposed order explicitly
 
 *402
 
 state that Watlington "was a career State employee."
 

 This Court has repeatedly held " 'the law does not permit parties to swap horses between courts in order to get a better mount,' meaning, of course, that a contention not raised and argued in the trial court may not be raised and argued for the first time in the appellate court."
 
 Wood v. Weldon
 
 ,
 
 160 N.C.App. 697
 
 , 699,
 
 586 S.E.2d 801
 
 , 803 (2003) (quoting
 
 Weil v. Herring
 
 ,
 
 207 N.C. 6
 
 , 10,
 
 175 S.E. 836
 
 , 838 (1934) ). RCDSS never contested the application of the SHRA to Watlington nor Watlington's status as a career State employee prior to its arguments on appeal. We affirm the ALJ's conclusion that Watlington was a career State employee subject to the SHRA. As such, RCDSS must show just cause exists for her termination.
 

 VI. Applicable Section of the North Carolina Administrative Code
 

 The ALJ concluded Title 25, Subchapter J of the North Carolina Administrative Code ("Subchapter J") governs this case. RCDSS argues Title 25, Subchapter I ("Subchapter I") controls, because Watlington was considered a local government employee. To provide clarity for the ALJ on remand, we address when these respective subchapters of the North Carolina Administrative Code apply.
 

 A. Review of Title 25, Subchapters I and J
 

 Title 25 of the North Carolina Administrative Code was promulgated pursuant to the SHRA, which established:
 

 a system of personnel administration under the Governor, based on accepted principles of personnel administration and applying the best methods as evolved in government and industry. It is also the intent of this Chapter that this system of personnel administration shall apply to local employees paid entirely or in part from federal funds, except to the extent that local governing boards are authorized by this Chapter to establish local rules, local pay plans, and local personnel systems.
 

 N.C. Gen. Stat. § 126-1
 
 (2015). The State Human Resources Commission establishes the procedures and rules governing many aspects of this personnel system.
 
 N.C. Gen. Stat. § 126-4
 
 (2015).
 

 *522
 
 Title 25 contains the rules adopted by the Commission and includes distinct subchapters on various personnel topics. Relevant to this appeal, Subchapter J, "Employee Relations," contains a section "Disciplinary Action: Suspension and Dismissal," which provides the procedures and rules regarding just cause and dismissals for unacceptable personal conduct. 25 NCAC 01J.0603 - .0618 (2016)
 

 Subchapter I, "Service to Local Governments," provides the procedures and rules specific to the personnel system developed for local government employees, including subsections on recruitment and selection, classification, and compensation.
 
 See
 
 25 NCAC 01I.1800, .1900, and .2100 (2016). Subchapter I includes a separate subsection on "Disciplinary Action: Suspension, Dismissal and Appeals," which includes rules regarding just cause and dismissal for unacceptable personal conduct. 25 NCAC 01I.2301 and .2304 (2016). These rules vary slightly from the rules and procedures stated under Subchapter J.
 
 See
 
 25 NCAC 01J.0603 - .0618.
 

 Subchapter I begins with the "Applicability" section:
 

 [The SHRA] provides for the establishment of a system of personnel administration applicable to certain local employees paid entirely or in part from federal funds. Local governing boards are authorized by G.S. 126 to establish personnel systems which will fully comply with the applicable federal standards and then may remove such employees from the state system to their own system.
 

 25 NCAC 01I.1701 (2016).
 

 In this case, the parties assert different interpretations of 25 NCAC 01I.1701. RCDSS argues in its brief this provision of Subchapter I is "merely implementing
 
 N.C. Gen. Stat. § 126-1
 
 , which allows local governing boards to establish local personnel systems
 
 if
 
 they so choose." RCDSS asserts Subchapter J applies to State employees and Subchapter I applies to local government
 
 *403
 
 employees, unless the local government removes those employees to its own separate system not governed by either Subchapter I or J. On the other hand, Watlington argues 25 NCAC 01I.1701 gives local governments the authority to remove certain employees from the State system, Subchapter J, to the local government system under Subchapter I.
 

 We agree with RCDSS. As 25 NCAC 01I.1701 notes, the SHRA provided the State Human Resources Commission with the authority to establish a personnel system for certain local government employees.
 

 *523
 
 The rules for that system are contained within Subchapter I. The second sentence in 25 NCAC 01I.1701 simply recognizes the ability of a local government to remove its employees to its own, separate system, if and when certain requirements are met.
 

 Based upon our review of the case law, the SHRA, and the entirety of Title 25, we find Subchapter J applies to State employees and Subchapter I applies to local government employees.
 
 See, e.g.
 
 ,
 
 Blackburn v. Dep't of Pub. Safety
 
 , --- N.C.App. ----, ----,
 
 784 S.E.2d 509
 
 , 522 (2016) (applying Subchapter J to a former State employee of the Department of Public Safety);
 
 Ramsey v. N.C. Div. of Motor Vehicles
 
 ,
 
 184 N.C.App. 713
 
 , 718-19,
 
 647 S.E.2d 125
 
 , 128-29 (2007) (applying Subchapter J to a former State employee of the Division of Motor Vehicles);
 
 Steeves v. Scotland Cnty. Bd. of Health
 
 ,
 
 152 N.C.App. 400
 
 , 406-07,
 
 567 S.E.2d 817
 
 , 821-22 (2002) (applying Subchapter I to a former Scotland County Health Director, a career State employee under the SHRA, who was dismissed for "unacceptable personal conduct");
 
 Fuqua v. Rockingham Cnty. Bd. of Social Servs.
 
 ,
 
 125 N.C.App. 66
 
 , 71,
 
 479 S.E.2d 273
 
 , 276 (1997) (applying Subchapter I to a former director of the Rockingham County Department of Social Services, who was dismissed based on "unacceptable personal conduct").
 

 B. Applicability to this Case
 

 Finding of Fact 19 of the ALJ's final decision states:
 

 19. Respondent offered no evidence demonstrating that it is exempt from the provisions of the State Human Resources Act ("SHRA"),
 
 codified at N.C.G.S. § 126-1 et seq, as implemented by the North Carolina Administrative Code at 25 NCAC 01J.0101 et seq
 
 , or that its disciplinary or grievance procedures have been recognized by the State Human Resources Commission as substantially equivalent. (emphasis supplied).
 

 The ALJ further stated in Conclusion of Law 2 that due to the resolutions passed by the Rockingham County Board of Commissions, and in absence of an exemption, "Respondent's conduct as to disciplinary or grievance procedures is controlled by [Subchapter J]."
 

 Both Finding 19's assertion "as implemented by the North Carolina Administrative Code at 25 NCAC 01J.0101
 
 et seq
 
 " and Conclusion of Law 2 are reviewed
 
 de novo
 
 on appeal.
 
 See
 

 Zimmerman v. Appalachian State Univ.
 
 ,
 
 149 N.C.App. 121
 
 , 131,
 
 560 S.E.2d 374
 
 , 380-81 (2002) ("We will review conclusions of law
 
 de novo
 
 on appeal regardless of their label.").
 

 *524
 
 We hold Subchapter I is applicable in this case, and reverse the ALJ's conclusions that Subchapter J applies. 25 NCAC 01A.0103(6) (2016) provides the definition of local government employees as "those employees of local social services departments, public health departments, mental health centers and local offices of civil preparedness which receive federal grant-in-aid funds." The evidence and the ALJ's findings of fact demonstrate Watlington's position fits this definition as an employee of a local department of social services, RCDSS. As such, Subchapter I, and not Subchapter J, governs both the substantive just cause determination, the analysis of whether any procedural violations occurred in this case, and the remedies available.
 

 VII. Just Cause Analysis
 

 N.C. Gen. Stat. § 150B-34 (2015) provides that "[i]n each contested case the administrative law judge shall make a final decision or order that contains findings of fact and conclusions of law." The ALJ's duties are further clarified by 26 NCAC 3.0127 (2016) stating the ALJ's final decision "shall fully dispose of all issues required to resolve the case" and is required to contain "findings of fact" and "conclusions of law
 
 *404
 
 based on the findings of fact and applicable constitutional principles, statutes, rules, or federal regulations."
 

 As a career State employee subject to the SHRA, Watlington's employment may only be "discharged, suspended, or demoted for disciplinary reasons" upon a showing of "just cause."
 
 N.C. Gen. Stat. § 126-35
 
 (a). In this case, the ALJ articulated the correct three-part
 
 Warren
 
 test applicable to terminations alleging unacceptable personal conduct:
 

 The proper analytical approach is to first determine whether the employee engaged in the conduct the employer alleges. The second inquiry is whether the employee's conduct falls within one of the categories of unacceptable personal conduct provided by the Administrative Code. Unacceptable personal conduct does not necessarily establish just cause for all types of discipline. If the employee's act qualifies as a type of unacceptable conduct, the tribunal proceeds to the third inquiry: whether that misconduct amounted to just cause for the disciplinary action taken.
 

 Warren v. N.C. Dep't of Crime Control and Pub. Safety
 
 ,
 
 221 N.C.App. 376
 
 , 382-83,
 
 726 S.E.2d 920
 
 , 925 (2012) ;
 
 see
 

 Harris
 
 , --- N.C.App. at ----,
 
 798 S.E.2d at 135
 
 .
 

 Just cause must be determined based "upon an examination of the facts and circumstances of each individual case. Inevitably, this inquiry
 
 *525
 
 requires an irreducible act of judgment that cannot always be satisfied by the mechanical application of rules and regulations."
 
 Harris
 
 , --- N.C.App. at ----,
 
 798 S.E.2d at 134
 
 (citation and quotation marks omitted).
 

 This Court has noted:
 

 In an administrative proceeding, it is the prerogative and duty of the ALJ, once all the evidence has been presented and considered, to determine the weight and sufficiency of the evidence and the credibility of the witnesses, to draw inferences from the facts, and to appraise conflicting and circumstantial evidence. The credibility of witnesses and the probative value of particular testimony are for the ALJ to determine, and the ALJ may accept or reject in whole or part the testimony of any witness.
 

 Id.
 

 at ----,
 
 798 S.E.2d at 133
 
 (brackets, citations, and quotation marks omitted).
 

 Here, the ALJ's final decision addressed the first prong of the
 
 Warren
 
 test in Finding of Fact 13. The ALJ found Watlington had engaged in the conduct as RCDSS alleged. This finding of fact is not disputed by either party and is binding on appeal.
 
 See
 

 Koufman v. Koufman
 
 ,
 
 330 N.C. 93
 
 , 97,
 
 408 S.E.2d 729
 
 , 731 (1991).
 

 However, the ALJ failed to make any findings of fact or conclusions of law applying the second and third prongs of the
 
 Warren
 
 test to the facts of this case.
 
 See
 

 Warren
 
 ,
 
 221 N.C.App. at 382-83
 
 ,
 
 726 S.E.2d at 925
 
 . Nothing in the final decision indicates Watlington's conduct as found by the ALJ amounted to unacceptable personal conduct. Furthermore, as both the RCDSS and Watlington acknowledge in their briefs, no conclusion of law asserts RCDSS had substantive just cause for any disciplinary action against Watlington. Rather, under the last section of the order labeled "Final Decision," the ALJ simply states "Petitioner's termination is affirmed." This statement does not constitute an acceptable conclusion of law that RCDSS terminated Watlington based upon just cause.
 
 See
 
 id.
 

 Pursuant to N.C. Gen. Stat. § 150B-51, we remand the case to the ALJ to make proper findings of fact and conclusions of law regarding: (1) whether Watlington's conduct constituted unacceptable personal conduct, and (2) "whether that misconduct amounted to just cause for the disciplinary action taken."
 

 Id.
 

 ;
 
 see
 

 Harris
 
 , --- N.C.App. at ----,
 
 798 S.E.2d at 135
 
 . In making such determinations on remand, the ALJ is bound by the definitions and procedural requirements of Subchapter I.
 

 *526
 

 VIII. Award of Back Pay
 

 Back pay is not provided as a remedy for a procedural violation under Subchapter I. Both parties agree 25 NCAC 01B.0432(b) expired in 2014 and no provision has been promulgated in its place. Furthermore, we note N.C. Gen. Stat. § 150B-33(11), which is cited by the ALJ in support of the award of back pay, does not provide the ALJ with independent authority to award back pay.
 

 *405
 
 N.C. Gen. Stat. § 150B-33(11) allows the ALJ to award attorney's fees or witnesses' fees under certain circumstances, one of which is when the ALJ awards back pay as provided in the General Statutes and North Carolina Administrative Code. Because we find that Subchapter I, and not Subchapter J, governs this case, we reverse the ALJ's award for back pay.
 

 Upon remand, the ALJ should determine whether a procedural violation occurred under Subchapter I. If the ALJ determines a procedural violation occurred, the ALJ is limited to those remedies provided in Subchapter I.
 

 IX. Conclusion
 

 RCDSS never contested Watlington's status as a career State employee or that she is subject to the provisions of the SHRA. We affirm the ALJ's conclusion of law that Watlington was a career State employee subject to the SHRA, and as such RCDSS must show just cause for her termination. We reverse the ALJ's conclusion of law that Subchapter J applies, and hold Subchapter I governs this case.
 

 The ALJ failed to make appropriate findings of fact or conclusions of law to allow us to review the substantive just cause determination. We remand to the ALJ to make findings of fact and conclusions of law applying the three-step inquiry as set out in
 
 Warren
 
 to the facts of this case. In doing so, the ALJ must apply the definitions of just cause and unacceptable personal conduct found in Title 25, Subchapter I of the North Carolina Administrative Code.
 

 We reverse that portion of the ALJ's order awarding Watlington back pay. On remand, the ALJ should determine whether RCDSS committed a procedural violation under Subchapter I. If a procedural violation exists, the ALJ is bound by and limited to those remedies provided under Subchapter I.
 
 It is so ordered.
 

 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
 

 Judges ELMORE and DIETZ concur.