STROUD, Judge.
 

 *295
 
 Petitioner appeals from a final decision of the Office of Administrative Hearings ("OAH") which concluded that petitioner
 
 *644
 
 failed to prove by a preponderance of the evidence she was significantly better qualified for a position with respondent North Carolina Department of Health and Human Services ("NCDHHS") than the selected candidate, because she did not meet the minimum requirements for the position. On appeal, petitioner raises issue with several findings and argues that the Administrative Law Judge ("ALJ") erred in concluding that she did not have substantially equal qualifications as the selected candidate. After review, we affirm the final decision.
 

 Background
 

 Petitioner began working for NCDHHS in January of 2005 in the Microbiology Unit of the State Laboratory of Public Health. She held the position of a Laboratory Specialist and worked on the Special Bacteriology bench in the lab, one of many benches within the lab on which petitioner was trained. Petitioner worked for the State Lab for 11 years.
 

 In January 2015, petitioner applied for a Medical Laboratory Supervisor II position, and when she applied she was a career state employee. Dr. Samuel Merritt, the former unit supervisor for the Microbiology Unit with over 30 years of experience in laboratory work, was assigned as the hiring manager for the Medical Supervisor II position. He assessed petitioner's application. While he found she had much experience with the day-in and day-out routine of the lab and its benches, she had no supervisory experience in the job she held at the lab. Dr. Merritt, therefore, did not find her to be the best fit for the job amongst the other applicants who applied for the role of Medical Supervisor II. Dr. Merritt also reviewed Thomas Lawson's application. Mr. Lawson was not a State employee when he applied but he possessed the educational, work experience, and supervisory requirements that the hiring committee found necessary to perform the job. He had a supervisory role in a public health lab in Maryland overseeing six to twelve employees. He also had conducted testing in microbiology which was of clinical importance. Lawson had a degree in biology and a Master's degree in biotechnology. Given the totality of Lawson's application, the hiring officials considered him to be the best candidate out of the applications received. After conducting interviews, Merritt informed Lawson he was selected for the job, and Lawson started his role as Medical Supervisor II in May of 2016.
 

 *296
 
 On 1 November 2016, petitioner filed her petition with the Office of Administrative Hearings, arguing that NCDHHS failed to give petitioner promotional priority over a less qualified applicant who was not a career State employee and that she should have been given veteran's preference because she was the spouse of a disabled veteran. A hearing on the matter was heard before the ALJ on 14 and 15 February 2017. Following the hearing, on 12 April 2017, the ALJ entered his final decision, concluding that petitioner failed to prove by a preponderance of the evidence she was significantly better qualified for the position than the selected candidate and that she did not meet the minimum requirements for the position, so she was not qualified for veteran's preference. Petitioner timely appealed to this Court.
 

 Analysis
 

 On appeal, petitioner contends that the ALJ erred in making numerous findings and in concluding that she did not have substantially equally qualifications as the selected candidate, Mr. Lawson.
 

 I. Standard of Review
 

 " N.C. Gen. Stat. § 150B-51 (2015) governs the scope and standard of this Court's review of an administrative agency's final decision. The standard of review is dictated by the substantive nature of each assignment of error."
 
 Watlington v. DSS Rockingham County
 
 , --- N.C. App. ----, ----,
 
 799 S.E.2d 396
 
 , 400 (2017) (citations omitted). Under North Carolina General Statutes § 150B-51(b) :
 

 The court reviewing a final decision may affirm the decision or remand the case for further proceedings. It may also reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the findings, inferences, conclusions, or decisions are:
 

 *645
 
 (1) In violation of constitutional provisions;
 

 (2) In excess of the statutory authority or jurisdiction of the agency or administrative law judge;
 

 (3) Made upon unlawful procedure;
 

 (4) Affected by other error of law;
 

 (5) Unsupported by substantial evidence under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or
 

 (6) Arbitrary, capricious, or an abuse of discretion.
 

 ... With regard to asserted errors pursuant to subdivisions (1) through (4) of subsection (b) of this section, the court
 
 *297
 
 shall conduct its review of the final decisions using the de novo standard of review. With regard to asserted errors pursuant to subdivisions (5) and (6) of subsection (b) of this section, the court shall conduct its review of the final decision using the whole record standard of review.
 

 N.C. Gen. Stat. § 150B-51(b) - (c) (2017). Thus,
 

 [i]t is well settled that in cases appealed from administrative tribunals, questions of law receive
 
 de novo
 
 review, whereas fact-intensive issues such as sufficiency of the evidence to support an agency's decision are reviewed under the whole-record test. The court engages in
 
 de novo
 
 review where the error asserted is pursuant to § 150B-51(b)(1), (2), (3), or (4).
 

 Watlington
 
 , --- N.C. App. at ----,
 
 799 S.E.2d at 400
 
 (citations and quotation marks omitted).
 

 Under the whole record test, [t]he court may not substitute its judgment for the agency's as between two conflicting views, even though it could reasonably have reached a different result had it reviewed the matter
 
 de novo
 
 . Rather, a court must examine all the record evidence -- that which detracts from the agency's findings and conclusions as well as that which tends to support them -- to determine whether there is substantial evidence to justify the agency's decision. Substantial evidence is relevant evidence a reasonable mind might accept as adequate to support a conclusion.
 

 Harris v. NC Dept. of Public Safety
 
 , --- N.C. App. ----, ----,
 
 798 S.E.2d 127
 
 , 133 (citation, quotation marks, and brackets omitted),
 
 aff'd per curiam
 
 ,
 
 370 N.C. 386
 
 ,
 
 808 S.E.2d 142
 
 (2017).
 

 II. Lack of Minimum Qualifications for the Supervisor II Position
 

 Petitioner first argues that the ALJ erred in making these findings related to whether petitioner had the necessary supervisory experience for the position:
 

 23. The minimum education and experience requirements for the MLS II position required the successful candidate to have a Bachelor's degree in medical technology, chemistry, or biological science, and four years of laboratory experience, one of which is in a supervisory capacity.
 

 *298
 
 24. The [Knowledge, Skills and Abilities (KSAs) ] for the MLS II position required the successful applicant to have a background in microbiology, including basic lab methods for cultivating and identifying microorganisms and microscopic analysis. As the hiring manager, Dr. Merritt developed the KSAs required for the MLS II position.
 

 ....
 

 29. The KSAs established by the hiring manager specifically required the successful candidate to have supervisory and management experience. Petitioner testified that she did not have such experience; therefore, she did not meet the minimum qualifications for the Med Lab Supervisor II position.
 

 30. Though petitioner initially indicated that she had supervisory experience on her application, her own testimony made it clear that she did not have this minimum experience.
 

 31. Petitioner's application was initially screened into the pool of minimally qualified applicants because she inaccurately stated in her application that she had supervisory experience. Upon review by Dr. Merritt, who was familiar with her work, an appropriate determination was made that Petitioner did not meet the minimum job qualifications because she did not have
 
 *646
 
 the required management and supervisory experience.
 

 ....
 

 40. Petitioner was not included in the most qualified pool of candidates. She did not have the necessary laboratory experience in a supervisory and management capacity.
 

 Petitioner contends that the ALJ erred in making the above findings of fact regarding her experience and lack of a supervisory role at the lab. Ultimately, the ALJ found that her experience as a Lab Tech in the State lab for 11 years, paired with her education, without any managerial role, did not amount to the minimum requirements for the job posting.
 

 Petitioner argues that she covered several other benches during the months between when the position became vacant and was filled and that the hiring committee did not properly weigh the evidence of her supervisory role in the lab. She argues that she "checked the work of the people on the other benches in the unit" and had to write her own evaluations and conduct monthly quality control. Thus "when [petitioner]
 

 *299
 
 applied for the Supervisor II position, she had been trained on all the benches in the Microbiology Unit, could work all of them, and had done quality control on all of the benches." But even if petitioner did take on more responsibility with that vacancy, she still had no official managerial or supervisory role. She did a portion of the work a supervisor would do, such as overseeing the work on the benches, but she did not hire or fire employees.
 

 When asked at the hearing whether she ever held a position with a supervisory title to it, petitioner responded, "No." Petitioner was again asked "[d]id you have two years of supervisory experience at the time you applied?" and she responded, "No." And petitioner acknowledged at the hearing that she made no hiring decisions in her position and that she had never been assigned to evaluate other employees or evaluated other employees. But on her application, when asked whether she had supervisory and management experience, petitioner wrote "Yes." This evidence supports the findings as entered by the ALJ -- and in turn provides substantial evidence to justify the agency's final decision that petitioner did not meet the minimum qualifications for the position as posted.
 
 See
 

 Harris
 
 , --- N.C. App. at ----,
 
 798 S.E.2d at 133
 
 .
 

 Petitioner also contends that the ALJ ignored the full text of the job description, because the description included the language "or an equivalent combination of education and experience." There were apparently several versions of the job posting listed in various places at different times, but petitioner argues that all versions contained this equivalency language. For example, petitioner's Exhibit 4 refers to a job bulletin posting for the position which listed as minimum education and experience requirements a "Bachelor's degree ... and four years of laboratory experience in the assigned area, one of which is in a supervisory capacity; or an equivalent combination of education and experience[.]" Petitioner's Exhibit 8 indicated that the "Education and Experience Required" section of the job posting for the position stated:
 

 Preferably graduation from a four-year college or university with a B.A./B.S. or equivalent degree in medical technology, microbiology, or biological sciences. And three years of supervisory laboratory experience, preferably microbiology-related.
 

 Alternatively, an equivalent combination of education and experience that includes an Associate degree in medical technology, microbiology or microbiology-related.
 

 Coursework must include at least one class in general
 
 *300
 
 microbiology or basic medical microbiology. Additional courses in biochemistry, chemistry, biology, immunology, or microbiology are preferred.
 

 Continuing education courses in any of the above subjects would also be beneficial.
 

 Position requires a background in microbiology with at least 3 years of work experience in supervision and management. ...
 

 But petitioner has not shown that the trial court's findings regarding her experience as it related to that required for the position were erroneous. Petitioner's application erroneously stated that she had supervisory experience. She later testified that she has
 
 *647
 
 never held a supervisory title. Moreover, Dr. Merritt testified that he wrote the knowledge, skills, and ability section ("KSAs") of the job description, and that portion of the job description never stated an equivalency would be acceptable. The KSA was consistently written to reflect a requirement that the applicant have knowledge and background "in supervision and management." The ALJ did not err in ultimately concluding that petitioner did not meet this requirement. The trial court's findings are supported by the evidence.
 
 See, e.g.,
 

 Teague v. Western Carolina University
 
 ,
 
 108 N.C. App. 689
 
 , 692-93,
 
 424 S.E.2d 684
 
 , 686-87 (1993) ("The evidence presented in the case at hand does not lead this Court to the conclusion that the Commission's decision to uphold Mr. McClure's determination was patently in bad faith or whimsical. Mr. McClure had to make his decision based on the qualifications he found in the applications and elicited during the interviews. Ms. Teague's application did not state that she held an advanced degree, nor did it contain any references to her relevant and substantial experience. ... Based upon the information he had before him, Mr. McClure reasonably concluded that Ms. Teague's qualifications were not 'substantially equal' to Ms. Murchison's." (Citation and quotation marks omitted) ).
 

 III. Additional Findings Regarding Required Supervisory Experience
 

 Petitioner also contends that the ALJ erred in making these findings, Findings of Fact No. 34, 39, and 45, in relation to the qualifications sought for the position:
 

 34. The MLS II position has both technical and supervisory aspects; however, the supervisory responsibilities are primary and present in the other responsibilities of the job. While the MLS II would perform some lab testing, this was not the expected primary role. Specialists are the
 
 *301
 
 subject matter experts and expected to perform the bench testing and to trouble shoot issues arising on the bench. The MLS II would oversee and coordinate these activities.
 

 ....
 

 39. At the time Dr. Merritt was hiring for the MLS II position, he was looking for a candidate with previous supervisory experience. While the candidate needed broad knowledge of the testing areas that would be supervised, the candidate did not need to be an expert in performing the various tests.
 

 ....
 

 45. Shadia Rath was hired as a Med Lab Supervisor II without prior supervisory experience. This was in the bioterrorism area that was previously part of the microbiology unit. Rath served in this position during 2004-2007, nine years prior to the posting of the position at issue in this case. The fact that she was hired nine years ago, by a different supervisor into a different Med Lab Supervisor II position, is not relevant to a determination of whether Petitioner met the minimum qualifications for the Med Lab Supervisor II position at issue in this case.
 

 In relation to Finding of Fact No. 34, testimony from Dr. Merritt and Dr. Scott Zimmerman supported the ALJ's finding that the focus in filling the Supervisor II position was on the supervisory and managerial aspects of the position, more so than the technical aspects. And this was reflected in the job posting description, which reiterated a need for supervisory and management experience. Finding of Fact No. 39, which focuses specifically on what Dr. Merritt was looking for in candidates, again reiterates the need for supervisory experience. This finding is supported by his testimony.
 

 On Finding of Fact No. 45, Ms. Rath testified that she served in a Supervisory II position from 2004 to 2007. She also testified that when she was promoted to the Supervisor II position, she had never held a supervisory title. But Ms. Rath was hired almost a decade earlier, by someone other than Dr. Merritt, and no evidence was presented of the job posting for the Supervisor II position at the time she applied or whether it listed a requirement of prior supervisory experience. Therefore, we hold these findings are supported by substantial evidence.
 

 *648
 

 *302
 
 IV. Business Records Exception to Hearsay
 

 Petitioner next contends the ALJ erred in making findings of fact No. 28, 43, and 46 -- which pertain to Mr. Lawson's credentials -- because they are based on hearsay. Petitioner argues that Lawson's credentials are all hearsay because the credentials were presented on notes and paper the hiring officials -- including Dr. Merritt -- compiled during Lawson's interview for the Medical Supervisor II job. The ALJ found as fact:
 

 28. Thomas G. Lawson met the minimum education requirements as he has a Bachelor's degree in biology and a Master's degree in biotechnology. Lawson also had several years of laboratory experience in a supervisory capacity. This exceeded the MLS II position requirement for at least a year of laboratory experience in a supervisory capacity.
 

 ....
 

 43. Review of Lawson's application revealed that he exceeded the minimum qualifications for the MLS II position:
 

 a. Lawson oversaw the laboratory operations for a clinical and environmental testing laboratory. He designed, implemented, and managed components for quality assurance programs.
 

 b. Lawson developed and maintained standard operating procedures; competency assessment for testing; proficiency testing; corrective action reporting; specimen turnaround time optimizations; compliance auditing; and new assay performance verification.
 

 c. Lawson hosted and directed federal auditors during Clinical Laboratory Improvement Amendment inspections.
 

 d. Lawson was involved in budgeting activities and established relationships within the biotech industry. He communicated with stakeholders, public health officials, vendors, and news media.
 

 e. Lawson conducted recruitment, selection, and orientation procedures for new employees; conducted employee performance evaluations; and managed
 
 *303
 
 employee promotions and discharges. Lawson provided technical oversight and training of between 6 and 12 scientists in several testing areas.
 

 f. Lawson had several years of testing experience as a microbiologist. He conducted molecular testing for the detection of bio-threat agents and infectious organisms. He performed quality control for testing he conducted. He worked as a senior microbiologist at the Texas Department of State Health Services performing biological tests to detect infectious organisms using testing techniques utilized in the SLPH.
 

 ....
 

 46. Lawson was offered the MLS II position and he accepted the offer. He started in the MLS II position in May 2016. Lawson was not a career state employee of the State of North Carolina at the time he was hired into the MLS II position. Dr. Merritt, in conjunction with the interview team, concluded that Lawson was the most qualified candidate; and that he was significantly better suited to the position than Petitioner. Lawson possessed the laboratory experience in a supervisory and management capacity that Petitioner did not have.
 

 At the OAH hearing, petitioner objected several times to the admission of evidence regarding Lawson's credentials, arguing this evidence was hearsay because Mr. Lawson was not present to testify. Hearsay is defined as, "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2017). "However, statements offered for other purposes are not hearsay."
 
 Taylor v. Abernethy
 
 ,
 
 174 N.C. App. 93
 
 , 99,
 
 620 S.E.2d 242
 
 , 246 (2005) (citations, quotation marks, and brackets omitted). Also, hearsay evidence may be admissible if it falls under one of the exceptions to the hearsay rule listed in North Carolina Rules of Evidence Rule 803.
 
 See
 
 N.C. Gen. Stat. § 8C-1, Rule 803 (2017). Business records are one such exception.
 
 See, e.g.
 
 , N.C. R. Evid. Rule 803 (6) ("The following are not excluded by the hearsay rule, even though the declarant
 
 *649
 
 is available as a witness: ... (6) Records of Regularly Conducted Activity.").
 

 Here, the ALJ overruled Petitioner's objection based upon the "records of regularly conducted activity" exception to the hearsay rule
 
 *304
 
 because Mr. Lawson's job application and the hiring officials' notes taken during the interview about Lawson's credentials were business records kept as a part of the usual hiring process. As noted above, records of regularly conducted activity are addressed in Rule 803(6), which states,
 

 A memorandum, report, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if (i) kept in the course of a regularly conducted business activity and (ii) it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by affidavit or by document under seal ... made by the custodian or witness, unless the source of information or the method or circumstances or preparation indicate lack of trustworthiness.
 

 Id
 
 .
 

 NCDHHS presented several exhibits which petitioner claims are inadmissible hearsay, including Mr. Lawson's application for the job and interview notes, which also include information on his credentials and experience. Petitioner's first objection came after Ms. Shanda Snead began testifying about Mr. Lawson's education based upon his job application. Ms. Snead was the "recruiter for Public Health," a department within NCDHHS that includes the State Lab of Public Health. Her job was to
 

 work with the hiring managers when there's a vacancy or a new position that needs to be filled. In going through that process, I would create the posting, working with the applicant tracking system, requesting -- receiving the applications, reviewing them, screening them, and then sending them the qualified applicants and then following up with them later on if there's questions with the hiring, interview process.
 

 She testified about the usual process used by NCDHHS for hiring, including the entire process of posting the job, collecting information on the applicants, screening the applicants, and selecting the applicant. The information is collected in the "NEOGOV system[,]" which is an electronic system. She would then screen the applications for minimum qualifications, and those that met the minimum job qualifications would be transmitted to the hiring manager, who is normally the supervisor
 
 *305
 
 who will decide which applicants to interview and ultimately hire. She described specifically the job posting for the position at issue in this case, as well as the receipt and screening of the applications, including those from Mr. Lawson and petitioner. Both of these applications were collected and transmitted to the hiring manager -- in this case, Dr. Merritt -- in the usual manner.
 

 Petitioner objected to this testimony and the job application as hearsay because "Mr. Lawson is not here to verify and -- which statement -- call for the truth of the matter, sir." Counsel for respondent noted that the job application was admissible hearsay under the business records exception. He noted that the application and information submitted to the hiring manager comes from the applications submitted by the applicants through the NEOGOV system.
 

 Business records made in the ordinary course of business at or near the time of the transaction involved are admissible as an exception to the hearsay rule if they are authenticated by a witness who is familiar with them and the system under which they are made. The authenticity of such records may, however, be established by circumstantial evidence. There is no requirement that the records be authenticated by the person who made them.
 

 State v. Wilson
 
 ,
 
 313 N.C. 516
 
 , 533,
 
 330 S.E.2d 450
 
 , 462 (1985) (citations omitted).
 

 The evidence here showed that the job applications and other information about the qualifications of the job applicants, including Mr. Lawson, were "(i) kept in the course of a regularly conducted business activity,"
 

 *650
 
 N.C. R. Evid. 803(6), specifically, NCDHHS's process for posting new jobs and hiring new employees. "[I]t was the regular practice of" NCDHHS to collect applications in the NEOGOV system and to use this data compilation to make the hiring decisions.
 
 See
 

 id
 
 . Ms. Snead was a "custodian or other qualified witness" who testified about the business practice of collecting the applications and transmitting them to the hiring manager.
 

 Id.
 

 Therefore, the ALJ correctly overruled petitioner's objection based on hearsay, since Mr. Lawson's application and the other records regarding his qualifications were business records admissible under Rule 803(6).
 
 Id
 
 .
 

 This situation is similar to
 
 State v. Cagle
 
 ,
 
 182 N.C. App. 71
 
 , 76,
 
 641 S.E.2d 705
 
 , 709 (2007), where the Director of Security for Biltmore Mall testified about the Mall's "procedures and processes for handling problematic checks" in a prosecution for obtaining property by
 
 *306
 
 writing worthless checks. The defendant objected to her testimony about the worthless checks since "she did not witness their processing at the bank."
 
 Id
 
 . But this Court held that her testimony about the bad checks was admissible under Rule 803(6) because she testified about "the Mall's handling of the checks" based upon her first-hand knowledge of the Mall's procedures.
 
 Id
 
 .
 

 The same analysis would apply to the interview notes taken during Mr. Lawson's interview for the job. These notes were a "memorandum, report, record, or data compilation" of the "opinions" of the interviewer "made at or near the time" of the interview, and it was also part of the regular practice of NCDHHS to keep a record of the interview notes.
 
 See
 
 N.C. R. Evid. 803(6). In addition, essentially the same information was included in the interview notes as in Mr. Lawson's application.
 
 See generally
 

 Thanongsinh v. Board of Educ.
 
 ,
 
 462 F.3d 762
 
 , 775-76 (7th Cir. 2006) ("The district court abused its discretion when it excluded the interviewers' score sheet from Cain's interview and the handwritten notes on that sheet. This document is admissible under the business record exception to the hearsay rule. ... In this case, Cain's score sheet is precisely the type of memorandum or record that falls within the ambit of the business record exception." (Citations, quotation marks, and footnote omitted) ).
 

 Petitioner contends that when Mr. Lawson completed his application, he did not work for NCDHHS, so any document he created could not fall under the business record exception to the general rule of exclusion of hearsay. But the focus is not on Lawson's position, but on the authentication of the records, including the information collected by NCDHHS as part of its regular hiring process. "There is no requirement that the records be authenticated by the person who made them."
 
 Wilson
 
 ,
 
 313 N.C. at 533
 
 ,
 
 330 S.E.2d at 462
 
 . Petitioner's argument that Mr. Lawson did not create the record has the same flaw as the defendant's argument in
 
 Cagle
 
 , as noted above, that the Mall Directory of Security "did not witness" the processing of the checks at the bank.
 
 Cagle
 
 ,
 
 182 N.C. App. at 76
 
 ,
 
 641 S.E.2d at 709
 
 . Petitioner has not noted any reason for exclusion of this information on the theory that "the source of information or the method or circumstances of preparation indicate lack of trustworthiness." N.C. R. Evid. Rule 803(6). In addition, Dr. Merritt's interviews were taken in the usual course of his role as hiring manager to interview applicants for the open position. Dr. Merritt made a "data compilation" of his "opinions" regarding the qualifications of the applicants, including Mr. Lawson, "at or near the time" of the interview, and these were kept as part of the "regular practice" of NCDHHS to keep
 
 *307
 
 records of the hiring process.
 
 Id
 
 . Both Dr. Merritt and Ms. Snead testified at length about this process. Therefore, the ALJ correctly overruled Petitioner's objection to the testimony and evidence regarding Mr. Lawson's qualifications as they were shown on his application and as reflected in Dr. Merritt's interview notes when he was making the hiring decision. In addition, the ALJ's findings of fact regarding Mr. Lawson's credentials and experience were supported by the record.
 

 V. Substantially Equal Qualifications
 

 Finally, petitioner argues that the ALJ erred in concluding that she did not have substantially equal qualifications as Mr. Lawson and in failing to give her priority
 
 *651
 
 consideration as a career State employee for the position. Because we have concluded that the ALJ did not err in finding that petitioner failed to meet the minimum qualifications for the position, she also did not qualify for priority consideration. Therefore, it was not error for the ALJ to decline to give her priority consideration as a career State employee, as an employee must meet the minimum qualifications for the position for the priority to apply.
 
 See
 
 25 N.C.A.C. 01H.0635(a) ("The employee or applicant must possess at least the minimum qualifications set forth in the class specification of the vacancy being filled.").
 

 Conclusion
 

 We affirm the final decision of the Office of Administrative Hearings.
 

 AFFIRMED.
 

 Judges DAVIS and ARROWOOD concur.