NO. COA13-790

NORTH CAROLINA COURT OF APPEALS

Filed: 4 March 2014

MILLIE E. HERSHNER,

    Petitioner,

    v.

NC DEPARTMENT OF ADMINISTRATION
and THE NC HUMAN RELATIONS
COMMISSION,

    Respondent.

Wake County
No. 12 CVS 8765

Appeal by respondent from order entered 11 January 2013 by Judge Paul C. Ridgeway in Wake County Superior Court. Heard in the Court of Appeals 11 December 2013.

> *John Walter Bryant and Amber J. Ivie for petitioner-appellee.*

> *Roy Cooper, Attorney General, by Ann Stone, Assistant Attorney General, for respondent-appellant.*

STEELMAN, Judge.

Where unchallenged findings of fact support the decisions of the administrative law judge and state personnel commission, the trial court did not err in adopting their findings of fact and conclusions of law. Where respondent failed at trial to present evidence to support the alleged bases for petitioner's termination, the trial court did not err in affirming the

decisions of the administrative law judge and state personnel commission that petitioner's termination was wrongful. Where the state personnel commission had a quorum at the time it commenced business, it was authorized to issue a decision.

## I. Factual and Procedural Background

Millie Hershner (petitioner) was employed by the North Carolina Department of Administration (DOA), Human Relations Committee (HRC) (collectively, respondent) as a staff attorney. Citizens who believe their rights under the Fair Housing Act have been violated can file complaints with the HRC. As part of her employment duties, petitioner assisted investigators in these cases and helped to determine whether HRC should hear them.

In 2005, petitioner was hired as an Attorney I for respondent. She was selected for this position over another applicant, Richard Boulden. In 2006, Boulden was selected for an Attorney II position, making him petitioner's supervisor. Prior to 2006, petitioner had only one disagreement with Boulden. At the time, Boulden, a case investigator, had determined that a case had cause, while petitioner determined that it did not. Subsequent to his promotion, Boulden did not train petitioner, or meet with her to establish any kind of work

plan or standards, as required by respondent's "Performance Management System." However, on Boulden's first review of petitioner's work, he gave her a negative performance rating. Petitioner subsequently advised Boulden that he could not rate her performance negatively without stating the basis for the rating; Boulden then amended the performance ratings, so that they were positive, but in the lower range.

Following the low rating, petitioner contacted the complainants in cases on which she had previously worked. One such complainant, Virginia Radcliffe (Radcliffe), had threatened to sue HRC. On 3 January 2008, Boulden contacted Radcliffe, informed her that HRC was no longer working on her case, and told her that he would be the sole point of contact between Radcliffe and respondent. Boulden claimed at the hearing that he had overheard petitioner speaking with Radcliffe on the telephone later that day, although he did not raise the issue with petitioner at the time.

On 9 June 2008, Boulden informed petitioner of a disciplinary meeting concerning her conversation with Radcliffe on 3 January 2008. On 11 June 2008, petitioner received a Final Written Warning for unacceptable personal conduct, specifically insubordination, with regard to her continued contact with

Radcliffe. This letter outlined five numbered rules that petitioner had been expected to follow. There was no evidence presented that petitioner had violated any of these rules, or that petitioner had any subsequent contact with Radcliffe.

On 24 August 2009, petitioner was dismissed for unacceptable personal conduct, including conduct unbecoming a State employee that was detrimental to State service, violation of a known work rule, and insubordination. Specifically, three acts were alleged as the basis for this dismissal: (1) petitioner sent two letters to Radcliffe, containing allegedly confidential information; (2) petitioner contacted Stephanie Williams (Williams), another complainant, and informed her that she believed Williams' case had "cause," before a final determination had been made by HRC; and (3) petitioner had been instructed to work on a single assignment, to the exclusion of others, and yet continued to work on other assignments. John Campbell, Executive Director of HRC (Campbell) admitted that petitioner was not fired due to a failure to meet expectations, a failure to do her job, or unsuccessful job performance due to lack of skill or effort. Further, an HRC Supervising Investigator, Maggie Faulcon, observed that she had "never heard of anyone ever even being disciplined for discussing the

likelihood of the determination with a party, and for certain, never heard of anyone losing their job over such a thing."

On 4 December 2009, petitioner filed a petition for a contested case hearing in the Office of Administrative Hearings (OAH). On 3 February 2012, Administrative Law Judge Donald W. Overby (ALJ) issued his decision, and held that respondent's dismissal of petitioner was unwarranted and should be reversed. Respondent appealed the ALJ's decision to the State Personnel Commission. On 23 May 2012, the SPC issued its decision and order, adopting the findings of fact and conclusions of law of the ALJ, and affirming the decision in favor of petitioner. Respondent appealed to the Superior Court of Wake County. On 11 January 2013, the trial court affirmed the decision of the SPC, and ordered that petitioner be reinstated with back pay and benefits.

Respondent appeals.

## II. Standard of Review

"In cases appealed from administrative tribunals, we review questions of law *de novo* and questions of fact under the whole record test." *Diaz v. Div. of Soc. Servs.*, 360 N.C. 384, 386, 628 S.E.2d 1, 2 (2006).

"[W]e consider *de novo* whether the Commission erred in reaching its conclusion that 'just cause' existed for petitioner's termination." *Amanini v. N.C. Dep't of Human Res.*, 114 N.C. App. 668, 678, 443 S.E.2d 114, 120 (1994).

### III. Adoption of Findings and Conclusions by Trial Court

In its first argument, respondent contends that the trial court erred in adopting the findings of fact and conclusions of law of the ALJ and SPC. We disagree.

The ALJ made one hundred and twenty five findings of fact, which were adopted by the SPC, and ultimately adopted by the trial court. Respondent challenges the evidentiary support for only ten of these findings. Those findings which respondent does not challenge are binding upon this court. *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991).

Even assuming *arguendo* that respondent is correct, and that these ten findings were not supported by evidence in the record, there were one hundred and fifteen unchallenged findings. We hold that these remaining findings of fact support the ALJ's conclusions of law. These conclusions of law support the decisions of the SPC and trial court to affirm the ALJ's decision.

This argument is without merit.

## IV. Affirming the ALJ and SPC

In its second argument, respondent contends that the trial court erred in affirming the decisions of the ALJ and SPC. We disagree.

Respondent contends that petitioner was dismissed due to violations of guidelines, particularly those in the Final Written Warning dated 11 June 2008, relating to the disclosure of confidential information and contacting a complainant. Respondent contends that petitioner's violation of these guidelines constituted just cause for petitioner's dismissal.

At trial, respondent supported its claim that petitioner's conduct was unbecoming a State employee with two letters, written by petitioner to Radcliffe, which respondent contends contained confidential information about cases and derogatory remarks about petitioner's supervisor and HRC. However, respondent failed to offer any evidence that the information in these letters was confidential. Respondent also failed to present evidence that these letters were detrimental to State service simply because they may have contained negative remarks concerning petitioner's supervisor. The ALJ concluded that "[t]he Respondent failed to meet its burden to establish that any information released by the Petitioner . . . was

confidential to anyone other than the Petitioner, who is free to waive that confidentiality as she chooses." The ALJ also concluded that "[t]he Respondent failed to meet its burden to establish that the release of information by Ms. Hershner was detrimental to state service simply because it may have been negative regarding one Supervisor[.]" These conclusions were affirmed by the SPC and trial court.

Respondent also contended that petitioner was dismissed, in part, for the willful violation of a known work rule, specifically for her alleged disclosure to Williams of the status of her case. However, respondent presented no evidence that this rule applied to HRC attorneys such as petitioner. Evidence in the record instead supported a finding that this rule applied to the non-attorney investigators, and that investigators regularly disregarded this rule. Petitioner's supervisor testified that he had never told petitioner that this policy was grounds for dismissal. One investigator testified that such a policy did not apply to attorneys, and that she had not heard of investigators being disciplined for discussing preliminary determinations with complainants. The ALJ concluded, based upon this evidence, that the State had not met its burden of establishing that this policy existed, or that

such a policy was enforced prior to being used as a basis to discipline petitioner.

Finally, respondent alleged as its third basis for petitioner's dismissal that petitioner was insubordinate, in that she willfully refused to carry out a reasonable order from her supervisor. Respondent contends that this directive was to work on nothing but an appellate brief for one specific case. However, the directive was for petitioner to make the brief her "top priority," not to cease all other work. The ALJ found that the case in question was ultimately dismissed as a result of her supervisor's conduct, not as a result of petitioner's work. The ALJ further concluded that:

> The Respondent failed to establish its burden that the Petitioner was insubordinate in her handling of the writing of the Appellate Brief, when she had been commended by the Executive Director of the Agency for postponing her vacation to finish a brief, putting her work ahead of her personal life, she had never missed a filing deadline in her work at the HRC, the Petitioner still had fifteen days remaining within which to finish the brief before its due date when she was placed on administrative leave by the Agency Counsel, the HRC Agency Counsel eventually decided to abandon the appeal without ever filing the brief, and the very day the Petitioner was placed on Administrative leave she was told by the Agency Counsel that the brief was only a "top priority" not her only priority.

We have previously held that, "according to the Commission's regulations, 'just cause' for dismissal has been divided into two basic categories—unsatisfactory job performance and personal conduct (misconduct) detrimental to State service." *Amanini*, 114 N.C. App. at 679, 443 S.E.2d at 120. In *Amanini*, we held that there was a distinction between the two categories:

> The JOB PERFORMANCE category is intended to be used in addressing performance-related inadequacies for which a reasonable person would expect to be notified of and allowed an opportunity to improve. PERSONAL CONDUCT discipline is intended to be imposed for those actions for which no reasonable person could, or should, expect to receive prior warnings.

*Id*. at 679, 443 S.E.2d at 120-21. In the instant case, the conduct at issue involved job performance, the first category. Alleged infractions under this category require prior notice and opportunity to improve. As the ALJ found, however, petitioner had never received such warning.

We hold that petitioner's termination, based upon disclosure of information which respondent failed to prove was confidential, violation of a rule which respondent failed to prove was in effect, and disobedience of an instruction which was not, in fact, disobeyed, was not supported by just cause. The trial court did not err in affirming the decisions of the

ALJ and SPC that respondent lacked just cause to terminate petitioner's employment.

This argument is without merit.

### C. Whether a Quorum Existed

In its third argument, respondent contends that the SPC lacked the authority to make its decision because a quorum of its members was not present. We disagree.

Of the nine members of the SPC, seven were present when petitioner's case was heard. Once the session of the SPC had opened, those with conflicts were asked to recuse themselves; two did so, leaving five remaining SPC members. Respondent contends that five members did not constitute a quorum, and that the SPC lacked authority to rule on petitioner's case.

At the time of petitioner's case, the SPC required a quorum of six in order to hear cases. N.C. Gen. Stat. § 126-2(f) (2011).[1] The term "quorum" is not defined in Chapter 126 of the North Carolina General Statutes. Black's Law Dictionary defines a quorum as "[t]he minimum number of members . . . who must be present for a deliberative assembly to legally transact

---

[1] In August of 2013, N.C. Gen. Stat. § 126-2(f) was amended to read "Five members of the Commission shall constitute a quorum." N.C. Gen. Stat. § 126-2(f) (2013). However, at the time of petitioner's hearing before the SPC, the statute required six members to constitute a quorum.

business[,]" but does not state at what time during the proceedings a quorum should be determined. *Black's Law Dictionary*, 1370 (9th ed. 2009). However, several other North Carolina statutes note that once a person is deemed present for quorum purposes, he is deemed present for the remainder of that meeting. *See* N.C. Gen. Stat. §§ 55-7-25(b), 55A-7-22(a) (2013). We hold that a quorum of the SPC is to be determined at the beginning of a meeting; once the meeting is opened, the SPC may conduct business regardless of subsequent recusals that may reduce the number of members voting on a particular issue below the number required for a quorum.

In the instant case, when the SPC commenced business, seven members were present, exceeding the six required for a quorum. At that time, a quorum was established. Respondent cites no authority to support the contention that this quorum was subsequently nullified by the recusal of two of its members. We hold that the SPC had a quorum, and therefore had the authority to hear petitioner's case.

This argument is without merit.

NO ERROR.

Judges GEER and ERVIN concur.