INMAN, Judge.
 

 *760
 
 An administrative law judge did not err in concluding that a county social services worker's acts of misconduct-including borrowing money and accepting gifts from the parents of children in her care-constituted just cause for termination of her employment.
 

 Petitioner Gloria R. Watlington ("Ms. Watlington") appeals from a final agency decision affirming the termination of her employment by
 
 *761
 
 the Rockingham County Department of Social Services ("RCDSS"). After careful review of the record and applicable law, we affirm.
 

 FACTUAL AND PROCEDURAL BACKGROUND
 

 Ms. Watlington worked for RCDSS as a Community Social Services Technician from 2012 until she was fired on 15 December 2015. Her job responsibilities included transporting children under RCDSS supervision; supervising case visits by parents with children under RCDSS supervision; and reporting the details of such visits to social workers assigned to the cases.
 

 When she was hired, Ms. Watlington was informed of the Rockingham County Personnel Policy, which included a provision prohibiting employees from accepting gifts or favors and engaging in other unacceptable personal conduct.
 

 On 9 December 2015, Ms. Watlington was placed on administrative leave with pay after she disclosed to coworkers that she had accepted a gift at the conclusion of a case visit. Two days later, the director of RCDSS conducted a pre-disciplinary/dismissal conference attended by Ms. Watlington and her supervisor. On 14 December, RCDSS notified Ms. Watlington in writing that her employment was being terminated immediately based on five instances of "unacceptable personal conduct" in violation of the Rockingham County Personnel Policy. The notice cited the following conduct by Ms. Watlington: (1) accepting a gift of jewelry from a foster child through a parent; (2) allowing parents and/or children under her supervision to buy food for Ms. Watlington; (3) buying herself items using money intended to be provided to a child's group home; (4) accepting a cash loan from a foster parent
 
 *45
 
 under her supervision; and (5) giving a bassinet to a foster parent without permission.
 

 Ms. Watlington immediately appealed her termination. The next day, 15 December 2015, the County Manager upheld the termination and notified Ms. Watlington of his decision in a letter. Ms. Watlington timely filed a Petition for Contested Case Hearing with the North Carolina Office of Administrative Hearings.
 

 Evidence and argument in the contested case were presented to Administrative Law Judge J. Randall May ("the ALJ") on 23 May 2016. The ALJ issued a final decision on 5 July 2016 affirming the termination of Ms. Watlington's employment but ordering RCDSS to pay her back pay for a procedural violation of the North Carolina Administrative Code.
 

 Both parties appealed to this Court. In
 
 *762
 

 Watlington v. Department of Social Services of Rockingham County
 
 , --- N.C. App. ----,
 
 799 S.E.2d 396
 
 (2017) ("
 
 Watlington I
 
 "), we affirmed the ALJ's finding that Ms. Watlington had engaged in conduct as alleged by RCDSS and the ALJ's conclusion that RCDSS could terminate Ms. Watlington's employment only for just cause, but we otherwise concluded that the ALJ's decision was in error.
 
 [1]
 
 We held that the ALJ had failed to make appropriate findings of fact or conclusions of law to allow appellate review of the just cause determination and remanded the matter for the ALJ to make such findings. We also reversed the ALJ's award of back pay to Ms. Watlington and remanded for the ALJ to determine whether RCDSS violated procedure and, if it did, to order a remedy provided by the appropriate subchapter of the North Carolina Administrative Code.
 

 The ALJ heard oral arguments on remand on 1 June 2017 and issued a final decision on remand on 12 July 2017. The final decision affirmed the termination of Ms. Watlington's employment and concluded that RCDSS had not violated any procedural requirement in the process of firing her. Ms. Watlington timely appealed to this Court.
 

 DISCUSSION
 

 I.
 

 Standards of Review
 

 Section 150B-51 of our General Statutes governs our standard of review of an administrative agency decision such as this. The statute provides different standards of review depending on the issues challenged on appeal. "[Q]uestions of law receive
 
 de novo
 
 review, whereas fact-intensive issues such as sufficiency of the evidence to support an agency's decision are reviewed under the whole-record test."
 
 N.C. Dep't of Env't & Natural Res. v. Carroll
 
 ,
 
 358 N.C. 649
 
 , 659,
 
 599 S.E.2d 888
 
 , 894-95 (2004) (citation omitted). Factual findings that are not challenged on appeal are presumed to be supported by competent evidence and cannot be disturbed by this Court.
 
 Blackburn v. N.C. Dep't of Pub. Safety
 
 ,
 
 246 N.C. App. 196
 
 , 210,
 
 784 S.E.2d 509
 
 , 519 (2016) ;
 
 see also
 

 N.C. State Bar v. Ely
 
 , --- N.C. App. ----, ----,
 
 810 S.E.2d 346
 
 , 351 (2018) (noting on whole-record review of an agency decision that "unchallenged findings are binding on appeal" (citation omitted) ).
 

 *763
 

 II.
 

 Analysis
 

 In
 
 Watlington I
 
 , this Court held that the ALJ had correctly articulated a three-part test to determine whether RCDSS had just cause to terminate Ms. Watlington's employment.
 
 Watlington I
 
 , --- N.C. App. at ----,
 
 799 S.E.2d at 404
 
 . The test, established by this Court's decision in
 
 Warren v. North Carolina Department of Crime Control and Public Safety
 
 ,
 
 221 N.C. App. 376
 
 ,
 
 726 S.E.2d 920
 
 (2012), requires the trial court to determine: (1) whether the employee engaged in the conduct alleged by the employer; (2) whether the conduct falls within one of the categories of unacceptable personal conduct provided in the North Carolina Administrative Code; and (3) whether the conduct "amounted to just cause for the disciplinary action taken."
 
 Id
 
 . at 382-83,
 
 726 S.E.2d at 925
 
 .
 

 *46
 

 Watlington I
 
 also held that the ALJ's final decision adequately addressed the first prong of the
 
 Warren
 
 test in its Finding of Fact 13, noting that because the finding was not disputed by either party, it is binding on appeal.
 
 Watlington I
 
 , --- N.C. App. at ----,
 
 799 S.E.2d at 404
 
 . On remand, the trial court made the same finding of fact,
 
 verbatim
 
 , which is also undisputed by either party and similarly binding here.
 
 Blackburn
 
 ,
 
 246 N.C. App. at 210
 
 ,
 
 784 S.E.2d at 519
 
 .
 

 Finding of Fact 13 establishes the following:
 

 While employed by [RCDSS], [Watlington] engaged in the following conduct: (1) accepted a loan in the amount of sixty dollars ($60.00) offered by a foster parent between two (2) and three (3) years prior to her termination by [RCDSS]; (2) used approximately six dollars ($6.00) of a minor child's money to purchase food for herself while transporting the minor child across the state at the request of her supervisor, which [Watlington] repaid to [RCDSS] within one (1) week; (3) consumed leftover food purchased by a foster parent for herself and a minor child when offered by the foster parent; (4) gifted a bassinet to a foster family being served by [RCDSS] from an area where [RCDSS] keeps both donations and property assigned to particular families under its supervision; [sic] and upon being notified of a problem, retrieved said bassinet and returned it to [RCDSS]; (5) accepted a slice of cake or cupcakes offered by a foster family at a minor child's birthday party; and (6) accepted a wrapped pair of earrings from a foster parent on behalf of her child, which was immediately returned upon issue [sic] raised by [RCDSS].
 

 *764
 
 The issues before us concern whether the undisputed misconduct, or any of it, falls within a category identified by the Administrative Code as unacceptable personal conduct, and if so, whether that unacceptable personal conduct justified termination of Ms. Watlington's employment, as opposed to lesser disciplinary action.
 

 A. Unacceptable Personal Conduct
 

 Title 25, Chapter 1, Subchapter I of the North Carolina Administrative Code identifies nine categories of unacceptable personal conduct. 25 N.C. Admin. Code 01I.2304(b)(1)-(9). The ALJ concluded that all but one incident of Ms. Watlington's misconduct fell within Category (4): "the willful violation of a known or written work rule." He further concluded that one or more other incidents fell within other categories of unacceptable personal conduct enumerated in 25 N.C. Admin. Code 01I.2304(b).
 
 [2]
 

 Ms. Watlington argues that conclusions concerning other categories outside of "willful violation of known or written work rules," were improperly made, as the only punishable conduct cited in RCDSS's termination letter amounted to violations of the Rockingham County Personnel Policy. In order to dismiss a state employee in service to local government, the law requires agency management to provide the employee with "a written letter of dismissal containing the specific reasons for dismissal" following a pre-dismissal conference. 25 N.C. Admin. Code 1I.2308(4)(f). As Ms. Watlington construes the law and the termination letter, RCDSS failed to specify any grounds for termination beyond violation of a written rule, and the ALJ's conclusions of law that her conduct also fell within other categories of unacceptable personal conduct were beyond the scope of the proceeding. We disagree.
 

 The termination letter describes, in detail, the "specific reasons for dismissal." 25 N.C. Admin. Code 1I.2308(f). The letter begins by stating that Ms. Watlington was dismissed "as a result of [her] unacceptable personal conduct." It then recounts the issues presented at the pre-dismissal conference:
 

 During the conference, we discussed the following concerns:
 

 1) Violation of Rockingham County Personnel Policy Article V, Conditions of Employment, Section 3, Gifts and Favors, Item (A) in that
 
 *47
 

 *765
 
 • The employee accepted a gift of jewelry from foster children/biological parent
 

 • The employee allowed parents/minor children in foster care to purchase the employee food and/or beverages on more than one occasion
 

 • The employee used money belonging to a child in foster care to purchase items for herself, knowing that the funds were the child's SSI monies intended for the group home.
 

 • The employee accepted cash monies from a foster parent.
 

 2) Violation of Rockingham County Personnel Policy Article V, Conditions of Employment, Section 3, Gifts and Favors, Item (A) in that
 

 • The employee, without permission, gifted a bassinet to a family being served by DSS
 

 From there, the letter includes "Findings" that Ms. Watlington admitted to each specific act enumerated above, followed by the "Conclusion" that dismissal was in the best interest of Rockingham County. By stating in the letter that Ms. Watlington was being dismissed for "unacceptable personal conduct" and subsequently detailing which specific acts RCDSS considered to be within the meaning of that term, it complied with 25 N.C. Admin. Code 1I.2308(f). The ALJ was subsequently permitted to make necessary conclusions of law as to whether and how the specific alleged acts amounted to "unacceptable personal conduct" within the meaning of 25 N.C. Admin. Code 1I.2304(b).
 

 Despite recitation of the specific acts constituting unacceptable personal conduct in the termination letter, Ms. Watlington posits that she was without sufficient notice to mount a defense as to any basis for dismissal beyond "willful violation of a known or written rule." The termination letter identified several written rules which Ms. Watlington had violated, but the express language she quotes in her appeal is derived from the Administrative Code and is not included in the termination letter.
 

 She relies solely on an analogy to this Court's holding in
 
 Timber Ridge v. Caldwell
 
 ,
 
 195 N.C. App. 452
 
 ,
 
 672 S.E.2d 735
 
 (2009), that a landlord wrongly terminated a lease without providing any notice of lease termination as required by the Code of Federal Regulations.
 
 195 N.C. App. at 455
 
 ,
 
 672 S.E.2d at 737
 
 . Setting aside the significant difference
 
 *766
 
 in areas of law,
 
 Timber Ridge
 
 is inapposite because: (1) the record on appeal in that case did not include any notice from which this Court could determine compliance with the relevant law,
 
 id.
 
 at 455,
 
 672 S.E.2d at
 
 737 ; and (2) the language of the relevant statute required the notice to " 'state the reasons for the landlord's action with enough specificity so as to enable the tenant to prepare a defense[,]' "
 
 id.
 
 at 453,
 
 672 S.E.2d at 736
 
 (quoting
 
 24 C.F.R. § 247.4
 
 (a) (2008) ), in marked difference to the language of the North Carolina Administrative Code provision pertinent to Ms. Watlington's dismissal.
 

 RCDSS notified Ms. Watlington in its termination letter that it believed she had engaged in "unacceptable personal conduct." It then detailed the specific acts amounting to "unacceptable personal conduct," consistent with 25 N.C. Admin. Code 01I.2308(4)(f). The contested case hearing before the ALJ afforded Ms. Watlington an opportunity to dispute whether those specific acts occurred as a matter of fact and whether they constituted unacceptable personal conduct as a matter of law. The ALJ, in turn, had full authority to conclude as a matter of law that Ms. Watlington's conduct fell within one of the enumerated categories of unacceptable personal conduct.
 
 Warren
 
 ,
 
 221 N.C. App. at 383
 
 ,
 
 726 S.E.2d at 925
 
 . Because the ALJ concluded that each of the acts falling within the category of "willful violation of a known or written work rule" also fell within another category of unacceptable personal conduct, and Ms. Watlington does not argue that those other categories were in error outside of the procedural argument overruled above, we hold that the ALJ fully satisfied the second
 
 Warren
 
 prong. Likewise, because we hold that the second
 
 Warren
 
 prong was satisfied independent of Ms. Watlington's "willful violation of a known or written work rule," we do not reach her argument that her conduct was not "willful" within the meaning of 25 N.C. Admin. Code 1I.2304(b)(4).
 

 *48
 
 B.
 
 Just Cause (
 
 De Novo
 
 Review)
 

 Subchapter 1I of Title 25 of the North Carolina Administrative Code permits dismissal of a State employee "for a
 
 current
 
 incident of unacceptable personal conduct." 25 N.C. Admin. Code 1I.2304(a) (emphasis added). Ms. Watlington contends that of the six acts concluded to be unacceptable personal conduct, only her acceptance of jewelry was current; as a result, Ms. Watlington reasons, any just cause analysis must focus solely on that act alone. Reviewing the record and applicable law, we disagree.
 
 [3]
 

 *767
 
 25 N.C. Admin. Code 1I.2304(a) does not define the word "current." Neither party cites, and we are unable to find, any case law interpreting the term with respect to this specific subchapter of the Administrative Code. A paucity of decisions addresses this term as used in other subsections of the Administrative Code.
 
 See
 

 Renfrow v. N.C. Dep't of Revenue
 
 ,
 
 245 N.C. App. 443
 
 , 448,
 
 782 S.E.2d 379
 
 , 382-83 (2016) (interpreting the word "current" as used in 25 N.C. Admin. Code 1J.0608, the subchapter applicable to discipline of state-rather than local government-employees). In
 
 Renfrow
 
 , the Department of Revenue discovered in 2012 that one of its employees had failed to pay $7,107.00 in taxes years earlier, between 2008 and 2010.
 

 Id.
 

 at 445
 
 ,
 
 782 S.E.2d at 380
 
 . In March 2012, the employee met with her supervisor and entered into a payment plan to cover her back taxes.
 

 Id.
 

 at 445
 
 ,
 
 782 S.E.2d at 380
 
 . Nineteen months after the March 2012 meeting, the Department of Revenue effectively dismissed the employee for her failure to comply with tax laws between 2008 and 2010.
 

 Id.
 

 at 445
 
 ,
 
 782 S.E.2d at 381
 
 . We reversed her dismissal after concluding that her acts of unacceptable personal conduct were not "current" per N.C. Admin. Code 1J.0608 "in the absence of
 
 any
 
 explanation for [the Department of Revenue's] nineteen-month delay."
 

 Id.
 

 at 448
 
 ,
 
 782 S.E.2d at 382
 
 (emphasis in original). We declined to impose a definite limit on the word "current," however, instead agreeing with the Department of Revenue that " '[r]ather than a length of time certain, allowing a reasonable time under the circumstances would seem more appropriate.' "
 

 Id.
 

 at 448
 
 ,
 
 782 S.E.2d at 382
 
 (alteration in original). We further noted that "[i]n cases like this one, where employee misconduct is not readily discoverable, whether the misconduct is a 'current incident' depends on the amount of time that elapsed between the employer's discovery of the misconduct and the contested disciplinary action."
 

 Id.
 

 at 448
 
 ,
 
 782 S.E.2d at
 
 382 n.1.
 

 In this case, the ALJ made three findings of fact that, although RCDSS staff were aware of some of the acts concluded to be "unacceptable personal conduct" before the investigation into Ms. Watlington in December 2015, none was known to any staff member with disciplinary
 
 *768
 
 authority. Ms. Watlington challenges these findings as unsupported by the evidence. But she does not challenge the ALJ's Conclusion of Law 8, which states: "Although some of the above [unacceptable personal] conduct does not appear to be 'current', it was first exposed to management by the December 2015 investigation."
 
 [4]
 
 Though labeled a conclusion of law, this determination consists solely of a factual finding that management was not apprised of Ms. Watlington's misconduct until December 2015. We treat conclusions of law that are in actuality factual determinations as findings of
 
 *49
 
 fact.
 
 Warren
 
 ,
 
 221 N.C. App. at 379
 
 ,
 
 726 S.E.2d at
 
 923 ;
 
 see also
 

 In re Simpson
 
 ,
 
 211 N.C. App. 483
 
 , 487-88,
 
 711 S.E.2d 165
 
 , 169 (2011) ("When this Court determines that findings of fact and conclusions of law have been mislabeled by the trial court, we may reclassify them, where necessary, before applying our standard of review." (citations omitted) ).
 

 Applied to the factual question of when RCDSS staff with disciplinary authority became aware of the alleged acts of unacceptable personal conduct, the "whole record test" requires "examination of whether the [ALJ's] unchallenged findings in the [ALJ's order] support the conclusion that 'just cause' existed to discharge [Ms. Watlington] from employment on grounds of unacceptable personal conduct[.]"
 
 Gray v. Orange Cty. Health Dep't
 
 ,
 
 119 N.C. App. 62
 
 , 75,
 
 457 S.E.2d 892
 
 , 901 (1995). Because Conclusion of Law 8 is an unchallenged factual finding, it is binding on this Court.
 
 Blackburn
 
 ,
 
 246 N.C. App. at 210
 
 ,
 
 784 S.E.2d at
 
 519 ;
 
 see also
 

 Watlington I
 
 , --- N.C. App. at ----,
 
 799 S.E.2d at 404
 
 (holding Finding of Fact 13 in the first final decision entered by the ALJ as binding because it went unchallenged by either party on appeal).
 

 Even if we were to assume
 
 arguendo
 
 that Conclusion of Law 8 is not binding, the evidence supports findings that at least two of the relevant acts of misconduct were unknown to management staff of RCDSS until December 2015: (1) the acceptance of jewelry during a case visit between a parent and a child under Ms. Watlington's supervision; and (2) the receipt of a $60 loan from a foster parent of a child under her supervision. It is not necessary that every act committed by Ms. Watlington be "current" so long as at least one instance of unacceptable personal conduct is, as "[o]ne act of [unacceptable personal conduct] presents 'just cause' for any discipline, up to and including dismissal."
 
 Hilliard v. N.C. Dep't of Corr.
 
 ,
 
 173 N.C. App. 594
 
 , 597,
 
 620 S.E.2d 14
 
 , 17 (2005) (citations omitted).
 

 *769
 
 It is undisputed that Ms. Watlington accepted the jewelry in December 2015. It is also undisputed that Ms. Watlington accepted the loan between two and three years earlier after she commented to a foster parent that she could not pay her power bill. But the testimony by RCDSS's then-director indicates that the loan-which Ms. Watlington admitted she had not paid back at the time of her dismissal-was not disclosed to management until December 2015 during the internal investigation; while Ms. Watlington's immediate supervisor addressed other issues in an 18-month period prior to December 2015, those issues arose outside the timeframe of the loan. The director testified that the unspecified issues addressed by Ms. Watlington's intermediate supervisor during the prior 18 months were not contained within the acts of unacceptable personal conduct listed in the pre-dismissal conference letter. The director further testified that the supervisor had previously addressed "performance issues, and the matter at hand [in the pre-dismissal conference] was a personal conduct issue." Finally, the director, when asked if she had participated in any prior discipline of Ms. Watlington, testified that she had only "overhear[ed] a conversation between [the intermediate supervisor] and Ms. Watlington when she was agitated[.]"
 
 [5]
 
 This testimony is "relevant evidence a reasonable mind might accept as adequate to support [the ALJ's] conclusion[,]"
 
 Carroll
 
 ,
 
 358 N.C. at 660
 
 ,
 
 599 S.E.2d at 895
 
 (citation and internal quotation marks omitted), and therefore sufficient to sustain his factual finding that persons with disciplinary authority were unaware of these prior acts of unacceptable personal conduct until December 2015.
 

 We are therefore left with the question of whether RCDSS's disciplinary actions concerning Ms. Watlington's prior acts of misconduct were taken within a "reasonable time under the circumstances."
 
 Renfrow
 
 ,
 
 245 N.C. App. at 448
 
 ,
 
 782 S.E.2d at 382
 
 (internal quotation marks omitted);
 
 see also
 

 Hershner v. N.C. Dep't of Admin.
 
 ,
 
 232 N.C. App. 552
 
 , 555,
 
 754 S.E.2d 847
 
 , 849-50 (2014) (holding
 
 *50
 
 that unchallenged findings supported an ALJ's conclusions of law even where the challenged findings were assumed to be unsupported by the evidence). We hold that they were. The evidence and factual finding in Conclusion of Law 8 establish that RCDSS management first became aware of Ms. Watlington's prior misconduct during the investigation in December 2015. Two days
 
 *770
 
 after placing her on leave and starting its investigation, RCDSS held a pre-dismissal conference with Ms. Watlington, wherein she admitted to the acts of unacceptable personal conduct. Three days after the conference, Ms. Watlington was dismissed. This five-day period-from management's discovery of these acts of unacceptable personal conduct to Ms. Watlington's dismissal-constitutes a "reasonable time under the circumstances,"
 
 id.
 
 at 448,
 
 782 S.E.2d at 382
 
 , and her acts were therefore "current" within the meaning of 25 N.C. Admin. Code 1I.2304(a).
 

 Ms. Watlington contends that the language of the administrative code expressly prohibits RCDSS from terminating her based on any prior acts of misconduct, regardless of when they became known to management, citing
 
 Renfrow
 
 . We disagree, in part because
 
 Renfrow
 
 is inapposite, as it interpreted the "current" nature of acts of unacceptable personal conduct by examining the time between management's knowledge and the employee's eventual dismissal, as opposed to the time between the conduct and the employee's dismissal.
 
 245 N.C. App. at 448
 
 ,
 
 782 S.E.2d at 382
 
 . Also, Ms. Watlington's interpretation of the word "current" would lead to illogical outcomes, and this Court will not adopt statutory construction that "will lead to absurd results[ ] or contravene the manifest purpose of the Legislature[.]"
 
 Frye Reg'l Med. Ctr., Inc. v. Hunt
 
 ,
 
 350 N.C. 39
 
 , 45,
 
 510 S.E.2d 159
 
 , 163 (1999) (citations and internal quotation marks omitted). For example, if the word "current" depends upon when personal misconduct occurred, the statute would immunize the clever employee who embezzles money on a single occasion and successfully hides that fact from management for a lengthy period of time. We therefore reject this interpretation and Ms. Watlington's argument on this point.
 

 Ms. Watlington next contends that RCDSS was without just cause to dismiss her, comparing the misconduct in this case to the misconduct in a plethora of cases in which our appellate courts have held just cause for dismissal existed. This formulaic approach is unpersuasive, as just cause "is a flexible concept, embodying notions of equity and fairness, that can only be determined upon an examination of the facts and circumstances of each individual case."
 
 Carroll
 
 ,
 
 358 N.C. at 669
 
 ,
 
 599 S.E.2d at 900
 
 (internal quotation marks and citations omitted).
 

 Turning to the specific "facts and circumstances of [this] individual case[,]"
 
 id.
 
 at 669,
 
 599 S.E.2d at 900
 
 , this Court has already affirmed the ALJ's finding that Ms. Watlington: (1) accepted a $60 loan from an RCDSS client; (2) used $6 of a minor child's money to purchase food for herself and paid the money back a week later; (3) accepted food from foster parents on multiple occasions; (4) gave a foster family a bassinet
 
 *771
 
 without authorization, though she later retrieved it once told it was a problem; and (5) accepted a gift of earrings from a foster parent and minor child, which was later returned once she was notified it was an issue. Broadly speaking, these acts display a repeated inclination by Ms. Watlington to accept gifts from or make gifts to RCDSS clients in contravention of RCDSS policy; while she did return some items, she appears to have done so only after being confronted by her supervisor. The ALJ correctly considered this conduct in the context of Ms. Watlington's duties, pointing out that her direct involvement with minor children "creat[ed] a heightened risk of legal and financial exposure for [RCDSS] upon her engagement in unacceptable personal conduct during the performance of her duties." He also correctly noted that Ms. Watlington's "actions can easily be misconceived by citizens to be the actions of the department as a whole[,]" and that "[i]n some instances, it is the appearance of an impropriety, as much as the impropriety itself, that has the potential of degrading [RCDSS's] reputation."
 
 [6]
 

 *51
 
 We agree with these observations by the ALJ. They apply to each of Ms. Watlington's acts of unacceptable personal conduct, whether considered collectively or individually, and, on
 
 de novo
 
 review, we hold that the ALJ properly concluded RCDSS possessed just cause to dismiss Ms. Watlington for her multiple acts of current unacceptable personal conduct.
 

 Although we hold RCDSS had just cause to dismiss Ms. Watlington, her argument that her conduct is not as severe as that in other cases where just cause existed is not a specious one. The record does not disclose that she committed a crime, caused anyone physical or emotional harm, or acted with evil or calamitous intent. But Ms. Watlington played a critical role in supervising and reporting on visitations with children in RCDSS custody, and her reports were relayed by social workers to trial courts tasked with determining the children's fates. The State's intercession into the relationship between a parent and a child, through the acts of its employees, implicates the "freedom of personal choice in matters
 
 *772
 
 of family life[,]"
 
 Santosky v.
 

 Kramer
 
 ,
 
 455 U.S. 745
 
 , 753,
 
 102 S.Ct. 1388
 
 , 1394,
 
 71 L.Ed.2d 599
 
 , 606 (1982), a "fundamental liberty interest [that] includes natural parents' ability to provide and maintain the care, custody and management of their child."
 
 In re Murphy
 
 ,
 
 105 N.C. App. 651
 
 , 653,
 
 414 S.E.2d 396
 
 , 397 (1992). And "[t]he State of North Carolina ... must remain a responsible steward of the public trust[,]"
 
 Peace v. Employment Sec. Comm'n of North Carolina
 
 ,
 
 349 N.C. 315
 
 , 327,
 
 507 S.E.2d 272
 
 , 281 (1998), particularly when "provid[ing] ... services for the protection of juveniles by means that respect both the right to family autonomy and the juveniles' needs for safety, continuity, and permanence." N.C. Gen. Stat. § 7B-100(3) (2017). Considered in this context,
 
 [7]
 
 Ms. Watlington's unacceptable personal conduct, albeit not necessarily malicious or corrupt, could erode the public's faith in RCDSS and provide the requisite cause to justify dismissal.
 

 CONCLUSION
 

 For the foregoing reasons, we affirm the ALJ's order concluding RCDSS possessed just cause to terminate Ms. Watlington.
 

 AFFIRMED.
 

 Judges ELMORE and MURPHY concur.
 

 [1]
 

 This Court in
 
 Watlington I
 
 held that the ALJ had incorrectly applied Subchapter J, of the North Carolina Administrative Code to Ms. Watlington's appeal, because her employment was governed by Subchapter I. We reversed the ALJ's conclusions of law and remanded for reconsideration, findings, and conclusions of law applying the correct subchapter.
 

 [2]
 

 These other categories were: (5) "conduct unbecoming an employee that is detrimental to the agency's service;" (6) "the abuse of client(s) ... or a person(s) over whom the employee has charge or to whom the employee has a responsibility;" and (8) "insubordination."
 

 [3]
 

 The parties treat the "current-ness" issue as part of
 
 Warren
 
 's second prong: "whether the employee's conduct falls within one of the categories of unacceptable personal conduct provided by the Administrative Code."
 
 221 N.C. App. at 383
 
 ,
 
 726 S.E.2d at 925
 
 . We hold that this question more properly falls within the third prong: "whether that misconduct amounted to just cause for the disciplinary action taken."
 
 Id.
 
 at 383,
 
 726 S.E.2d at 925
 
 . Our reasoning is simple. Ms. Watlington's conduct, regardless of any temporal considerations, fell within at least one category of "unacceptable personal conduct" in 25 N.C. Admin. Code 1I.2304(b), satisfying the second prong of
 
 Warren
 
 . Whether or not those acts of unacceptable personal conduct justify dismissal, however, is limited by the requirement that they be "current." Thus, the issue of "current-ness" involves only whether the particular act of unacceptable personal conduct may warrant dismissal,
 
 i.e.
 
 , whether the agency terminating employment had just cause to do so.
 

 [4]
 

 On appeal, Ms. Watlington could have challenged Conclusion of Law 8 as either: (1) a conclusion unsupported by any factual findings; or (2) a mislabeled finding of fact unsupported by the evidence. She did neither, however.
 

 [5]
 

 Ms. Watlington's counsel objected to "discussion of that conversation as hearsay[,]" and subsequent objections and a motion to strike further questioning and testimony concerning the conversation were sustained. That the director's only prior knowledge of a disciplinary matter regarding Ms. Watlington was witnessing a conversation, however, is not hearsay.
 

 [6]
 

 Ms. Watlington argues that these conclusions are contrary to the ALJ's finding in the order affirmed in part, reversed in part, and remanded in
 
 Watlington I
 
 that found no actual harm to RCDSS as a result of her actions. The absence of actual harm, however, does not preclude the ALJ from finding the existence of the potential for harm from the evidence, and she does not argue that repeated acts with the potential to cause harm cannot give rise to just cause for dismissal. Further, we note that there is evidence in the record to support the concerns identified by the ALJ: the employee orientation materials admitted into evidence acknowledge that ethical conduct is imperative "[b]ecause our reputation is important and the public is watching. We need to continue to improve our image."
 

 [7]
 

 Though we note the general significance of child welfare agencies and affirm the ALJ's conclusion that Ms. Watlington's specific acts violated her agency's personnel policies and justified her dismissal, we acknowledge that other counties may choose to protect the public trust by drafting rules different from RCDSS, and nothing in this opinion should be read to hinder or limit such a determination. Again, just cause "is a flexible concept, embodying notions of equity and fairness, that can only be determined upon an examination of the facts and circumstances of each individual case."
 
 Carroll
 
 ,
 
 358 N.C. at 669
 
 ,
 
 599 S.E.2d at 900
 
 (internal quotation marks and citations omitted).